# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| NICHOLAS DERBY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 14-12347-FDS |
| JOS. A. BANK CLOTHIERS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is a putative class action involving alleged violations of Mass. Gen. Laws ch. 93, § 105(a). Jurisdiction is based on the Class Action Fairness Act of 2005, as codified at 28 U.S.C. § 1332(d)(2)(A).

Plaintiff Nicholas Derby filed a class-action complaint in Massachusetts Superior Court alleging that defendant Joseph A. Bank Clothiers, Inc., had violated Section 105(a) by requiring customers to provide "personal identification information"—specifically, the customer's zip code—when making a purchase with a credit card. The complaint further alleges that the conduct violates Mass. Gen. Laws ch. 93A as an "unfair and deceptive trade practice." The complaint requests both statutory damages and an injunction against defendant's conduct, along with reasonable litigation expenses and attorneys' fees.

Defendant has moved to dismiss for failure to state a claim or, in the alternative, for a more definite statement. For the reasons set forth below, the motions will be denied.

I.  **Background**

The following facts are presented as stated in the complaint.

On April 23, 2013, plaintiff Nicholas Derby purchased items at a Jos. A. Bank retail store in Boston, Massachusetts. He used his credit card to pay for the items. As a condition of using his credit card, he was required by defendant to enter "personal identification information associated with the credit card, including his full and complete [z]ip [c]ode." (Complaint, ¶ 13). Defendant then recorded plaintiff's zip code "into an electronic credit card transaction form." (Complaint, ¶ 15). According to the complaint, defendant "continues to store [p]laintiff's personal identification information, including [p]laintiff's name, [z]ip [c]ode, and credit card number, in its databases." (*Id.*). The complaint cites defendant's online privacy policy as stating, "[W]e may share the personal data you provide to us with our service providers; [sic] with our affiliated companies." (Complaint, ¶ 17).

The complaint states that plaintiff has been injured through the receipt of "unwanted marketing materials" from defendant as a result of having provided his zip code when making a credit-card purchase. It also alleges injury on the ground that defendant "misappropriated [his] economically valuable [personal identification information] without consideration." (Complaint, ¶ 41).

II. **Procedural History**

On May 8, 2014, plaintiff filed a class-action complaint in Massachusetts Superior Court.[1] Plaintiff proposed to define the class as follows: "All persons from whom Jos. A. Bank requested and recorded personal identification information in conjunction with a credit card

---

[1] The complaint alleges (and defendant has not contested) that plaintiff made a pre-suit demand, pursuant to Mass. Gen. Laws ch. 93A § 9(3), more than 30 days prior to filing the complaint.

transaction occurring in Massachusetts," but excluding "Jos. A. Bank and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the [c]lass; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof."  (Complaint, ¶ 25).

The complaint requested both statutory damages (doubled or trebled under Mass. Gen. Laws ch. 93A) and an injunction against the complained-of conduct.  It also sought a declaratory judgment that defendant's actions violated Mass. Gen. Laws ch. 93 § 105 and ch. 93A § 9.

Defendant removed the action to this Court.  Defendant has moved to dismiss for failure to state a claim or, in the alternative, for a more definite statement.

### III. Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation

3

marks omitted).

IV. **Analysis**

Defendant contends that the complaint should be dismissed in whole or in part for three reasons: (1) that it does not allege sufficient facts to constitute a violation of section 105(a); (2) that the facts alleged do not demonstrate a sufficient causal link between defendant's actions and plaintiff's alleged injury; and (3) that plaintiff lacks standing with respect to the prayer for injunctive relief. Finally, defendant requests that, if the complaint is not dismissed, the plaintiff be ordered to make a more definite statement of his claims.

A. **Whether the Complaint Sufficiently Alleges a Violation of Section 105(a)**

Mass. Gen. Laws ch. 93, § 105(a) provides as follows: "No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form." The term "credit card transaction form" applies equally to both electronic and paper transaction forms. *Id.* at 505. The Massachusetts Supreme Judicial Court has confirmed that a zip code "may well qualify" as "personal identification information" for purposes of the statute. *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 500 (2013).

Defendant does not contest that, at least in some circumstances, a company that requires a customer to provide his zip code in order to complete a credit card transaction may violate section 105(a). However, defendant contends that plaintiff has not alleged sufficient facts to demonstrate that, under the particular circumstances of his transaction, defendant violated the statute. Specifically, defendant points to the language in section 105(a), which refers to the

4

personal identification information as being written "on the credit card transaction form." According to defendant, plaintiff has not alleged facts "showing this essential element." (Def. Mem. at 7). Defendant further contends that the complaint is deficient in not describing "when and how [p]laintiff's zip code was collected," because, in its view, section 105(a) only prohibits companies from collecting personal information "as a condition of paying with a credit card." (Def. Reply at 2).[2]

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" as well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Any such statements in the complaint are to be "identif[ied] and disregard[ed]." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). According to defendant, the complaint's failure to detail "when and how" plaintiff's zip code was collected renders its allegations insufficient under that standard.

The complaint directly alleges that plaintiff was required by defendant to provide his zip code "[a]s a condition of using his credit card." (Complaint, ¶ 13). In fact, it goes further: "Jos. A. Bank would not allow [p]laintiff to complete his purchase without supplying such information." (*Id.*). It is not clear what more defendant would ask plaintiff to plead to meet the factual sufficiency standard on this point. The "when" of defendant's alleged demand for plaintiff's zip code is clear: according to the complaint, it was made before plaintiff had completed his purchase, and was required before plaintiff could complete the purchase. That is

---

[2] A federal court has found that Section 105(a) does *not* require a showing that the defendant collected personal information as a condition of making a credit-card transaction. *Hancock v. Urban Outfitters Inc.*, 2014 WL 988971 at *5 (D.D.C. March 14, 2014) (distinguishing a District of Columbia statute from Section 105(a) on that basis). Because plaintiff has alleged sufficient facts to meet the more stringent "condition" requirement at the pleading stage, it is not necessary to resolve whether Section 105(a) in fact imposes this requirement.

exactly the type of conduct that is prohibited by Section 105(a). The "how" of the demand is immaterial; the language of the statute makes clear that either "writ[ing], caus[ing] to be written, or requir[ing] that a credit card holder write personal identification information" constitutes a violation of the statute. The allegations of the complaint are sufficient with respect to that issue.

The complaint also alleges that defendant recorded plaintiff's zip code "into an electronic credit card transaction form." (Complaint, ¶ 15). Defendant views that allegation as a "speculative conclusory assertion[] that just recite[s an] essential element" of Section 105(a). (Def. Mem. at 7). Certainly one can envision additional facts that might have been included to give the allegation more "heft." *See Twombly*, 550 U.S. 544, 557 (2007). The complaint does not describe the form in any detail, nor does it explain how the plaintiff was able to discern that the form used was in fact a "credit card transaction form." And the language used tracks the language in the statute, such that the allegation could plausibly be described as "parrot[ing] [an] element[]" of the statute. *See Ocasio-Hernandez*, 640 F.3d at 12.

However, at least in this context, the additional facts that might further illuminate the details of the purported credit card transaction form are not required at the pleading stage. Facts about the actual nature of the form are a proper subject for discovery. *See Tyler*, 464 Mass. at 505 n.22 ("Whether the electronic form into which Michaels employees enter zip codes is actually an electronic credit card transaction form is a factual question to be determined by the District Court judge."). Moreover, while the complaint may be light on details, the allegations describe a factual scenario that is entirely plausible. At the pleading stage, that is all that is required. *See Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of

6

specifics, but only enough facts to state a claim to relief that is plausible on its face.").[3]

Defendant further contends that plaintiff's proposed definition of the class demonstrates the insufficiency of the complaint. The complaint defines the class (before exclusions) as "[a]ll persons from whom Jos. A. Bank requested and recorded personal identification information in conjunction with a credit-card transaction occurring in Massachusetts." (Complaint, ¶ 25). Defendant is correct that the definition is overly broad, as it does not limit the class to those whose credit-card information was recorded on a "credit card transaction form." Indeed, the complaint makes three other references to the class in which it appears to sweep too broadly. First, it refers to the common claim of the class members as one that "Jos. A. Bank's collection of [zip] codes violated and violates" section 105(a). (Complaint, ¶ 29). Then, in two separate paragraphs, it describes the class as having been injured by the collection of their zip codes "in connection with their credit card transactions" (Complaint, ¶ 40) and "as a result of having provided their [z]ip [c]odes when using credit cards at Jos. A. Bank." (Complaint, ¶ 41).

Those descriptions of the alleged violation are hardly precise; recording personal information "in conjunction with" or "in connection with" a credit card transaction does not necessarily violate the statute. However, those portions of the complaint all relate only to plaintiff's proposed class definition. Even if defendant is correct that plaintiff's proposed definition of the class is inadequate, that does not control the present analysis. The allegation of

---

[3] *Hancock v. Urban Outfitters, Inc.*, cited by defendant, is not to the contrary. 2014 WL 988971 (D.D.C. Mar. 14, 2014). The court in *Hancock* considered a complaint that specifically alleged that Urban Outfitters had recorded zip codes into a "point-of-sale register, not into the credit-card-swipe machine." *Id.* at *4 (emphasis in original). The court held that "[b]y pleading that the defendants used a system entirely separate from the credit card transaction machine to record the plaintiffs' [zip] codes, the plaintiffs have utterly failed to plead that the defendants recorded anything 'on the credit card transaction form.'" *Id.* The court's holding thus sheds no light on whether a complaint that does allege that defendant recorded its zip code on a credit-card transaction form has met the pleading standard.

7

defendant's conduct during plaintiff's own credit-card transaction is sufficiently specific to survive dismissal.

Accordingly, the complaint will not be dismissed for failure to state a violation of § 105(a).

### B. Whether the Complaint Sufficiently Alleges Causation

The second basis on which defendant contends that the complaint should be dismissed is that it does not allege sufficient facts demonstrating that defendant's alleged violation caused plaintiff any injury or harm. Simply proving a violation of section 105(a) does not automatically afford a plaintiff a remedy; in order to receive damages under ch. 93A § 9, plaintiff must "allege and ultimately prove that [he] has, as a result [of the alleged violation], suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself." *Tyler*, 464 Mass. at 503.[4] The court in *Tyler* contemplated "at least two" categories of injury that could be caused by a violation of section 105(a): "the actual receipt by a consumer of unwanted marketing materials as a result of the merchant's unlawful collection of the consumer's personal identification information; and the merchant's sale of a customer's personal identification information or the data obtained from that information to a third party." *Id.* at 504. The court did not foreclose other possible injuries, but it did note that these two injuries were "of the type the Legislature apparently sought to prevent in enacting § 105(a)." *Id.* at 504 n.19.

Here, the complaint alleges two injuries resulted from defendant's conduct—the exact two injuries that the court contemplated in *Tyler*. The complaint reads: "First, [p]laintiff and the

---

[4] Mass. Gen. Laws ch. 93 § 105(c) provides as follows: "Any violation of the provisions of this chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of chapter 93A. This is why plaintiff can receive damages under ch. 93A as a result of conduct that violates ch. 93 § 105.

8

[c]lass have been injured because they have received unwanted marketing materials from Jos. A. Bank as a result of having provided their [z]ip [c]odes when using credit cards at Jos. A. Bank. And second, [p]laintiff and the [c]lass have been injured because Jos. A. Bank misappropriated their economically valuable PII without consideration." (Complaint, ¶ 41) (emphasis in original).

Despite the similarity of the injuries alleged in the complaint to those described in *Tyler*, defendant contends that the allegations are nonetheless insufficient. In fact, according to defendant, the obvious similarity of the allegations to those referred to in *Tyler* demonstrates that plaintiff is attempting to plead a complaint without any actual underlying facts. Accordingly, defendant contends that the allegations as to injury should be disregarded as "[t]hreadbare recitals" of legally-cognizable injuries, "supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678; *Ocasio-Hernandez*, 640 F.3d at 12.

The allegations of injury are indeed light on factual support. The complaint provides no explanation as to the plaintiff's basis for believing that he received marketing materials "as a result of" having provided his zip code to defendant. A zip code obviously is not the same as an address, so the causal connection between providing one's zip code and receiving marketing materials at one's home is not immediately clear.

However, the reasoning of *Tyler* sheds some light on the amount of proof necessary to show the causal link. In concluding that zip codes qualify as "personal identification information," the court noted that according to the complaint in that case, "a consumer's zip code, when combined with the consumer's name, provides the merchant with enough information to identify through publicly available databases the consumer's address or telephone

9

number." *Tyler*, 464 Mass. at 500. If this is true, then the question as to how providing one's zip code leads to the receipt of marketing materials becomes much easier to answer. Whether the proposition is true is a question of fact that defendant is free to dispute. However, all that is required at the pleading stage is that the allegations be plausible. *See Twombly*, 550 U.S. at 570. The explanation provided by the court in *Tyler* establishes the plausibility of this allegation.

Of course, to prove his case, plaintiff will have to prove more than simply the existence of publicly available databases that would have allowed defendant to locate its address. Plaintiff will have to prove that its receipt of marketing materials did in fact result from defendant's collection of zip codes (for example, by demonstrating that defendant successfully located plaintiff's address and then mailed marketing materials to him). But that proof requirement does not apply to the pleading stage. Plaintiff's allegations, while bare, satisfy the *Twombly* plausibility standard for pleadings with respect to the alleged injury.

Plaintiff's second alleged injury results from defendant's alleged "misappropriation" of his "economically valuable" personal identification information without consideration. (Complaint, ¶ 41). That injury also fits within the categories contemplated by *Tyler*. 464 Mass. at 504 ("When a merchant acquires personal identification information in violation of § 105(a) and uses the information for its own business purposes, [such as] by selling the information for a profit, the merchant has caused the consumer an injury that is distinct from the statutory violation itself and cognizable under G.L. c. 93A, § 9."). Here, the complaint attempts to provide additional support for the allegation by quoting from defendant's online privacy policy as follows: "[W]e may share the personal data you provide to us with our service providers; with our affiliated companies." (Complaint, ¶ 17 (alterations in original)). The complaint

characterizes this quote as a statement that defendant "sells consumers' [personal identification information] . . . to third-parties for profit." (*Id.*).

Defendant contends that the quoted section of defendant's online privacy policy does not demonstrate that defendant sold plaintiff's personal identification information for a profit. The policy arguably relates only to information shared online, as opposed to that provided in the store. It also says nothing about selling information for a profit; it refers only to "sharing" personal data. For these reasons, the Court agrees that the quoted section does not conclusively establish "misappropriation" by defendant.

The Court cannot say, however, that the allegation is so implausible as to require dismissal. The privacy policy is at least somewhat vague in multiple respects. It does not define the extent to which defendant "may share" personal data; it does not define "personal data"; it does not state that defendant will not sell the personal data; and it does not expressly state that point-of-sale transactions are excluded from the scope of the policy.[5] Plaintiff will have the burden of proving that defendant has indeed misappropriated his personal identification information, but the allegations are sufficient to survive the pleading stage.[6]

For the foregoing reasons, the complaint sufficiently alleges that plaintiff has been injured by defendant's conduct. Accordingly, the complaint will not be dismissed for failure to state a claim.

---

[5] Defendant correctly points out that the policy states that it "applies to the josbank.com website, which is owned and operated by Jos. A. Bank." The policy does not state, however, that it applies *only* to the defendant's website. Moreover, even if it does apply only to the website, it is not implausible to infer that defendant's point-of-sale policies mirror its website policies.

[6] Defendant also notes the great similarity of the complaint to other complaints filed by plaintiff's counsel in other actions alleging retailer violations of section 105(a). (Def. Mem. at 10-11). While the complaint is obviously similar, it is by no means clear that the similarity should affect the analysis of the sufficiency of the complaint.

11

### C. Whether Plaintiff has Standing to Seek Injunctive Relief

Defendant further contends that even if the complaint is not dismissed as a whole, the claim for injunctive relief should be dismissed because plaintiff lacks standing to assert it.

Chapter 93A, § 9 expressly authorizes injunctive relief. Mass. Gen. Laws ch. 93A, § 9 ("In addition [to damages], the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper.") However, a plaintiff lacks constitutional standing to seek injunctive relief unless he is "under threat of suffering" a cognizable injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]") (alteration in original). In the class-action context, at least one named plaintiff must meet the standing requirements; a threat of future injury to other, unnamed members of the class does not suffice. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

Here, defendant contends that plaintiff is not "under threat of suffering" an injury, because he has not alleged any threat of future harm. Specifically, plaintiff has not alleged that he intends or desires to shop at defendant's retail stores again, and he has not directly alleged any other future harm that defendant's continued (alleged) violations will cause him in the future. Moreover, defendant contends that there is no basis for concluding that plaintiff is at risk of future harm from defendant's alleged violations, as plaintiff is aware of defendant's conduct and can avoid making credit-card purchases from defendant's stores in the future.

12

Defendant is correct that a plaintiff must establish a "reasonable likelihood of future injury" to maintain a claim for injunctive relief. *McNair v. Synapse Group Inc.*, 672 F.3d 213, 225 (3d Cir. 2012). Within the consumer protection context, however, courts have split as to how strictly that requirement should be interpreted. Some courts have taken a hard-line stance and dismissed plaintiffs' claims for injunctive relief due to the absence of threat of future injury. *See, e.g.*, *id.* at 222-27 ("Because Appellants have not established any reasonable likelihood of future injury in this case, they have no basis for seeking injunctive relief against Synapse."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 474509 at *6-*7 (N.D. Ill. Feb. 7, 2013) ("[A]lthough Camasta has alleged that a "danger" exists that the practices will continue, he has not alleged that he personally will experience any harm in the future. Rather, at most, Camasta has alleged that [Jos. A. Bank] harmed him in the past, which is not sufficient to establish standing for injunctive relief."); *Waldron v. Jos. A. Bank Clothiers*, No. 12-CV-02060 (D.N.J. Jan. 28, 2013) ("Plaintiffs have failed to show a real or immediate threat, or even likelihood, that they will suffer future injury as a result of advertising done by Jos. A. Bank. . . . Plaintiffs are [thus] without standing to sue for injunctive relief or damages.").

However, there is also authority for the proposition that a consumer may maintain a class action for injunctive relief even where he will be able to "avoid the cause of the injury thereafter," as long as defendant's conduct is ongoing. *Henderson v. Gruma Corp.*, No. CV 10-04173, 2011 WL 1362188 at *8 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for [California consumer protection] claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the

cause of the injury thereafter."); *accord Lanovaz v. Twinings North Am., Inc.*, No. C–12–02646, 2014 WL 46822, at *10 (N.D. Cal. Jan.6, 2014); *Koehler v. Litehouse, Inc.*, No. CV 12–04055, 2012 WL 6217635, at *6-7 (N.D. Cal. Dec.13, 2012) (holding that to deny standing to such a plaintiff "would eviscerate the intent of the . . . legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief"); *see also Davis v. Powertel, Inc.*, 776 So.2d 971, 975 (Fla. Dist. Ct. App. 2000) ("Nothing in [Florida's Consumer Protection] statute requires proof that the declaratory or injunctive relief would benefit the consumer filing the suit."). Those courts have reasoned that if a court were "to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in [consumer protection] cases, a wholly unrealistic result." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (upholding standing to pursue injunctive relief in the context of a false advertising claim). In other words, any plaintiff that brings a claim for a violation of a consumer-protection statute is necessarily aware of the allegedly unlawful conduct and thus capable of avoiding it in the future. If that circumstance always barred injunctive relief, then no plaintiff could ever obtain injunctive relief under the statute.

Because ch. 93A, § 9 expressly authorizes injunctive relief, it is plain that the underlying legislative intent would be frustrated if the more restrictive rule were to be applied. That consideration, however, cannot override Article III standing requirements. If plaintiff is under no threat whatsoever of future injury, he cannot maintain a claim for injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1975).

Defendant is correct that plaintiff does not appear to be at risk of suffering a future injury by a future collection of plaintiff's personal identification information—again, plaintiff can simply avoid shopping at defendant's stores, or avoid using his credit card to make any purchases he does make at its stores. However, plaintiff *is* at risk of suffering a future injury that is caused by alleged ongoing conduct of defendant that directly relates to its prior alleged violation. Plaintiff has alleged injury on two grounds: the receipt of unwanted marketing materials and the defendant's "misappropriation" of its personal information and sale of the information for a profit. Assuming the truth of these allegations, then plaintiff could suffer further injury from that conduct.[7]

In short, plaintiff has alleged sufficient facts to establish that he is "under threat" of a future injury, and it is thus entitled to seek injunctive relief. Accordingly, the motion to dismiss the claim for injunctive relief will be denied.

### D. Defendant's Motion for a More Definite Statement

Defendant has moved in the alternative for a more definite statement of plaintiff's class action complaint under Fed. R. Civ. P. 12(e). That rule provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Here, the complaint is not vague or ambiguous: plaintiff clearly lists the statute that he alleges defendant violated, the conduct that he alleges violated that statute, and the relief requested. That is sufficient under the circumstances. Accordingly, the motion for a more definite

---

[7] Arguably, sending marketing materials to addresses acquired through the unlawful collection of personal information, or selling that personal information for a profit, would also constitute a violation of the statute. In that respect, plaintiff has alleged that defendant's violations are ongoing.

statement will be denied.

## V. Conclusion

There is certainly a credible argument to be made that this lawsuit is a foolish enterprise: plaintiff has suffered at most a very minor inconvenience, and even if he prevails, the most likely outcome would be a resolution that enriches lawyers without conferring a great benefit on anyone else. But that is an argument that is best directed to the political branches of government. Under the standards that this Court is required to employ, the complaint passes muster, and for that reason the motion to dismiss will be denied.

For the foregoing reasons, defendant's motions to dismiss the complaint and for a more definite statement are DENIED.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor |
|  | F. Dennis Saylor IV |
| Dated: December 23, 2014 | United States District Judge |